UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

IDRISS ZAKARIA ISSA,

Petitioner,

v.

MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; TODD BLANCHE, Acting Attorney General; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement; JESUS ROCHA, Acting Field Office Director, San Diego Field Office; JEREMY CASEY, Warden at Imperial Regional Detention Center,

Respondents.

Case No.: 26-cv-2117-BJC-DDL

**ORDER GRANTING IN PART PETITIONER'S WRIT OF HABEAS CORPUS FILED UNDER 28 U.S.C. § 2241**

**(ECF No. 1)**

Before the Court is Petitioner Idriss Zakaria Issa's ("Petitioner") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner initiated this action on April 3, 2026. *Id.* Respondents filed a response on April 29, 2026, and Petitioner filed a traverse on May 7, 2026. ECF Nos. 6; 8. For the reasons stated herein, the Petition is **GRANTED IN PART**.

# I. BACKGROUND

Petitioner, currently detained at the Imperial Regional Detention Facility, is a native and citizen of Sudan. ECF No. 1 at 2. Petitioner entered the United States on March 9, 2025, and was apprehended by Border Patrol that same day. *Id.* Border Patrol turned Petitioner over to Immigration and Customs Enforcement ("ICE") on March 10, 2025, and Petitioner was processed for expedited removal pursuant to Immigration & Nationality Act ("INA") § 235(b)(1). ECF No. 6-1, Declaration of Natalie Mendoza ("Mendoza Decl."), ¶ 6. At the time of his apprehension, Border Patrol determined Petitioner was subject to the Presidential Proclamation, which generally suspended physical entry into the United States and restricted access to provisions of the INA which otherwise allow noncitizens to remain in the country. *See* Presidential Proclamation 10888.[1] ECF No. 6 at 2. Thus, Petitioner was not referred for a credible fear or reasonable fear interview with an Asylum Officer. Mendoza Decl. ¶ 7. Instead, Petitioner was referred for a Convention Against Torture assessment by an Asylum Officer. *Id.* The Asylum Officer determined that Petitioner did not establish he was more likely than not to be tortured if removed to Sudan. *Id.* ¶ 8.

On September 24, 2025, Petitioner was issued an expedited order of removal, which superseded the March 9, 2025 expedited removal order. *Id.* ¶ 9. Petitioner was referred for a credible fear interview on September 25, 2025, and the Asylum Officer determined Petitioner did not establish a credible fear of persecution or torture. *Id.* ¶ 10. On September 26, 2025, an Immigration Judge affirmed the Asylum Officer's negative credible fear determination and ordered Petitioner removed to Sudan. *Id.* ¶11. Petitioner did not appeal this decision, though he states that he did not waive his right to appeal.[2] ECF No. 1-2 ¶ 2.

---

[1] Available at: https://www.federalregister.gov/documents/2025/01/29/2025-01951/guaranteeing-the-states-protection-against-invasion

[2] If Petitioner waived his right to appeal, the removal order became final on March 26, 2026. *See* 8 U.S.C. § 1241.1(b). If Petitioner did not waive his right to appeal, the removal order became final on April 26, 2026, "upon expiration of the time allotted for an appeal" because Portioner did "not file an appeal within that time." *Id.* at 1241.1(c)

The Department of Homeland Security ("DHS") is not in possession of a valid Sudanese passport pertaining to Petitioner. Mendoza Decl. ¶ 12. Thus, on March 8, 2026, ICE Enforcement and Removal Operations ("ERO") sent the Sudanese Government a written request for issuance of a travel document pertaining to Petitioner. *Id.* ¶ 13.

According to Respondents, before Sudan will issue a travel document to ICE on behalf of one of its citizens, it requires that its citizen first be interviewed by the Sudanese Consulate. ECF No. 6 at 3. Respondents contend that on March 18, 2026, Petitioner refused ERO's request to participate in a travel document interview with the Sudanese Consulate. *Id.* Thus, that same day, Petitioner was issued a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g). *Id.* Respondents contend the sole impediment to Petitioner's removal is his refusal to cooperate in obtaining a travel document. *Id.* Petitioner argues removal is unlikely because Sudan lacks a functional central authority for issuing passports and civil documents, and he cites to historical difficulty in removing individuals to Sudan. ECF No. 1 at 2–3. Petitioner has remained in detention since he was initially detained on March 9, 2025. ECF No. 6-1 ¶ 6.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.*

## III. DISCUSSION

### A. Jurisdiction

Respondents contend this Court lacks jurisdiction to hear Petitioner's claims. ECF

No. 6 at 3–4. The Court disagrees.

Under 8 U.S.C. § 1252(g) "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." However, the Supreme Court has given a narrow reading to the statute, finding that "the provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). Accordingly, there are "many other decisions or actions that may be part of the deportation process," which are not barred by 8 U.S.C. § 1252(g). *Id.* at 482; *see also Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) ("[8 U.S.C. § 1252(g)] does not prevent the district court from exercising jurisdiction over the plaintiffs' due process claims.").

Here, Petitioner is challenging the legality of his detention, not an action or decision by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders. Petitioner's claim is rooted in due process—i.e., a challenge to the length of his confinement. This Court is not barred from hearing such a claim.

The Court also has jurisdiction pursuant to §§ 1252(a)(2)(A) and (e). These provisions apply to 8 U.S.C. § 1225 and the expedited removal process. Petitioner is not challenging the procedures and policies governing an expedited removal under 8 U.S.C. § 1225. Rather, Petitioner is challenging the validity of his continued detention under 8 U.S.C. § 1231 and the standard articulated in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Thus, Petitioner's claims fall within this Court's jurisdiction.

**B. <u>Petitioner is Detained Under Section 1231</u>**

Respondents argue that Petitioner is being detained under 8 U.S.C. § 1225(b)(1) rather than § 1231 because Petitioner is "subject to a final *expedited* removal order as well as mandatory detention." ECF No. 6 at 7 (emphasis in original). Thus, under § 1225(b)(1), "Petitioner 'shall be' detained until removed." *Id.* (citing 8 U.S.C. § 1225(b)(1)).

Respondents appear to argue that an *expedited* order of removal renders § 1231 inapplicable. Not so.

Petitioner, relying on the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), argues that mandatory detention under § 1225 is only applicable "until certain proceedings have concluded." ECF no. 8 at 2 (quoting *Jennings*, 583 U.S. at 297). The Court agrees.

In *Jennings*, the Court observed that "§§ 1225(b)(1) and (b)(2), unlike § 1231(a)(6), provide for detention for a specified period of time." *Jennings*, 583 U.S. at 297. Under § 1225(b)(1), "[noncitizens] claiming a credible fear of persecution under § 1225(b)(1) 'shall be detained for further consideration of the application for asylum.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)). Under § 1225(b)(2), noncitizens "shall be detained for a removal proceeding." *Id.* (quoting 8 U.S.C. § 1225(b)(2)) (cleaned up). Sections "1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded." *Id.* "Once those proceedings end, detention under § 1225(b) must end as well." *Id.*

Here, Respondents do not dispute that Petitioner is subject to a final order of removal. *See* ECF No. 6 at 2 ("On September 26, 2025, an Immigration Judge affirmed the AO's negative credible fear determination and ordered that Petitioner's case be returned to DHS for removal."); *see also Nasrallah v. Barr*, 590 U.S. 573, 579 (2020) ("[I]n the deportation context, a 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'"). Respondents cite no legal authority for the proposition that an *expedited* final order of removal must be treated differently than any other final order of removal. Accordingly, Petitioner is currently detained under the statute governing post-final orders of removal, 8 U.S.C. § 1231. *See Rivera v. Florentino*, No. cv 25-18063 (SDW), 2025 WL 3765061 (D.N.J. Dec. 30, 2025) (citing *Deshati v. Noem*, No. 25-cv-15940, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)).

**C. Petitioner's Detention Has Become Indefinite**

The Immigration and Nationality Act ("INA") permits detention of noncitizens present in the United States during immigration proceedings. 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Under 8 U.S.C. § 1231, a noncitizen who is ordered removed shall be removed by the Department of Homeland Security within 90 days. 8 U.S.C. § 1231(a)(1)(A). During the removal period, the noncitizen must be detained. *Id.* Section 1231 governs detention during this 90-day removal period, which begins on the latest of either "(1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." *Avilez v. Garland*, 69 F.4th 525, 531 (9th Cir. 2023) (citing 8 U.S.C. § 1231(a)(1)(B)(i)–(iii)).

If the Government fails to remove the noncitizen during those 90 days, the statute only authorizes further detention in certain circumstances. Specifically, the Government may continue to detain a noncitizen who is: (1) "inadmissible" under certain grounds, (2) "removable" as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) has been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court addressed whether there was a limit to the time a noncitizen can be detained after the initial 90-day removal period expires. 533 U.S. at 682. The Court held that the statute limits a noncitizen's "post-removal-period detention to a period reasonably necessary to bring about [their] removal from the United States." *Id.* at 689. "[T]he statute 'does not permit indefinite detention.'" *Xi v. U.S. Immigration & Naturalization Serv.*, 298 F.3d 832, 836 (9th Cir. 2002) (quoting *Zadvydas*, 533 U.S. at 689). A noncitizen may only be held in confinement until "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. A six-month period of detention is presumptively reasonable. *Id.*

Once detention exceeds this presumptively reasonable period, the noncitizen's "continued detention is permissible if his removal is reasonably foreseeable." *Xi*, 298 F.3d at 839 (citing *Zadvydas*, 533 U.S. at 699–701). "[A noncitizen] is entitled to habeas relief after a presumptively reasonable six-month period of detention under § 1231(a)(6) only upon demonstration that the detention is 'indefinite'—i.e., that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Diouf v. Mukasey*, 542 F.2d 1222, 1233 (9th Cir. 2008) (quoting *Zadvydas*, 533 U.S. at 701).

The noncitizen has the initial burden of providing good reason to believe that no significant likelihood of removal exists in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. "'Good reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that.'" *Ashour v. Noem*, No. 3:26-cv-00422-RBM-SBC, 2026 WL 310198, at *2 (S.D. Cal. Feb. 5, 2026) (quoting *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019)). Courts have found this initial burden satisfied where "the passage of time combined with the government being no closer to repatriating a detainee than they were once they first took him into custody as being sufficient to meet that initial burden." *Senor*, 401 F. Supp. 3d at 430 (cleaned up). If the noncitizen satisfies the initial burden, then the Government "must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. If the Government fails to meet its burden, then the noncitizen must be released from detention. *Jennings*, 583 U.S. at 299.

Petitioner contends his thirteen-month detention following his final order of removal violates 8 U.S.C. § 1231 and *Zadvydas*. ECF No. 1 at 6. Respondents counter that Petitioner's failure to participate in an interview with the Sudanese Consulate is the sole impediment to his removal, and therefore precludes relief under *Zadvydas*. ECF No. 6 at 3.

The Ninth Circuit has found "that when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the

reasonably foreseeable future." *Lema v. United States INS*, 341 F.3d 853, 856 (9th Cir. 2003). The Ninth Circuit in *Lema* added, "[w]e cannot know whether an alien's removal is a 'remote possibility,' *Zadvydas*, 533 U.S. at 690, until the alien makes a full and honest effort to secure travel documents. *Lema*, 341 F.3d at 856; *see also*, *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("The risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention.).

The Court finds the facts in *Lema* and *Pelich* distinguishable from those presented here. In *Lema*, an Ethiopian national refused to comply with requests to provide documents establishing his nationality, or otherwise facilitate the Government's efforts to obtain travel documents. *Lema*, 41 F.3d at 857. The Ninth Circuit found that "the record contains substantial evidence that Ethiopia's reluctance to issue Lema travel documents is caused by Lema's continuing failure to cooperate with United States and Ethiopian officials to secure travel documents from Ethiopia." *Id.*

Similarly, in *Pelich*, the Ninth Circuit denied habeas relief to a Polish national who had provided "conflicting" biographical information, "refused to fill out a Polish passport application," and the Polish consulate had "explicitly reserved its determination" whether to issue travel documents pending the submission of additional information, "including the passport application." *Pelich*, 329 F.3d at 1059. Under those circumstances, the Ninth Circuit reasoned that the petitioner had "the keys to his freedom in his pocket" and "could likely effectuate his removal by providing the information requested by the INS." *Id.* (cleaned up). The Ninth Circuit therefore concluded that Petitioner remained lawfully subject to detention under 8 U.S.C. § 1231(a)(1)(C), which authorizes the Government to "extend[ ]" the 90-day "removal period" and detain a noncitizen who "fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen]'s departure or conspires or acts to prevent the [noncitizen]'s removal subject to an order of removal." *Id.*

Here, the limited record regarding Petitioner's alleged failure to cooperate is markedly different from the conduct alleged in *Pelich* and *Lema*. Respondents' sole basis for alleging Petitioner has obstructed his removal is his alleged refusal to participate in an interview with the Sudanese Consulate on March 18, 2026. The only evidence of Petitioner's alleged refusal is a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g). ECF No. 7 at 3.

First, the Notice contains an apparent contradiction. The Notice states the "[o]n March 18, 2026, you were advised, via Deportation Officer, of specific requirements to complete and were given 30 days to comply with your obligation to assist in obtaining a travel document." Yet, the Notice bears the digital signature of Field Office Director Miranda dated March 18, 2026—the same date at the alleged refusal. *Id.* The Notice does not explain how Petitioner could have failed to comply with an obligation for which he had purportedly been given 30 days to respond, particularly when the Notice itself bears the same date as the alleged refusal. Moreover, Respondents provide no evidence that the Notice was ever served on Petitioner. Nor do Respondents describe the circumstances surrounding the alleged refusal, explain what information or assistance Petitioner was asked to provide, or identify any subsequent instance in which Petitioner declined to cooperate with the travel-document process.

These deficiencies are significant. Unlike the petitioners in *Lema* and *Pelich*, the record here does not establish a pattern of noncooperation or demonstrate that Petitioner possesses information or documents that would enable the Government to secure his removal. Nor have Respondents shown that the Sudanese Consulate has declined or delayed issuing travel documents because of Petitioner's conduct. At most, the record reflects that Petitioner declined to participate in a single interview on a single date. That limited showing does not establish that Petitioner is responsible for the continued inability to effectuate his removal.

Accordingly, the Court is not persuaded that Petitioner had "the keys to his freedom in his pocket" but for his alleged noncooperation. *See Pelich*, 329 F.3d at 1060. The record

does not show "substantial evidence" of a "continuing failure to cooperate" sufficient to cause the delay in Petitioner's removal. *See Lema*, 41 F.3d at 857. Petitioner has remained in immigration custody for nearly two years, including more than one year since his removal order became final. Given the length of his detention and the absence of evidence that removal has become any more likely during that period, the Court finds that Petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[3] *Zadvydas*, 533 U.S. at 701.

The burden therefore shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents rely primarily on the fact that ICE removed twenty-seven Sudanese nationals from the United States over a four-year period. ECF No. 6 at 11. Respondents also note that, "[a]s of November 24, 2025, DHS is able to remove Sudanese aliens from the United States commercially via Ethiopian Airlines, which conducts daily flights to Port Sudan." This is insufficient.

Although the removal of other Sudanese nationals demonstrates that removal to Sudan is not categorically impossible, it does not establish that the Government can reasonably effectuate *Petitioner's* removal in the foreseeable future. Respondents offer no evidence of ongoing removal efforts. Respondents offer no evidence of ongoing efforts to obtain travel documents for Petitioner, the status of any request submitted to the Sudanese Consulate, or whether the Consulate is presently willing to issue Petitioner travel documents.

---

[3] The Court notes that, even if Petitioner participates in the interview process, the record raises substantial questions about whether his removal to Sudan is reasonably foreseeable. ICE removed only twenty-seven Sudanese nationals from the United States between October 2020 and December 2024. ECF No. 6-1 ¶ 18. This represents approximately 2.7% of Sudanese nationals with final orders of removal during the relevant period. *See id.*; *see also* ECF No. 8-1. Although this figure does not independently establish that Petitioner's removal is unlikely, it further undermines Respondents' assertion that removal is reasonably foreseeable.

Critically, Respondents also fail to establish that, but for Petitioner's alleged refusal to participate in the March 18, 2026 interview, his removal would be reasonably foreseeable. The record does not demonstrate that the single alleged refusal remains an impediment to removal, or that Petitioner has continued to obstruct the process. Respondents therefore have not rebutted Petitioner's showing with evidence that his removal is significantly likely in the reasonably foreseeable future. Accordingly, continued detention under § 1231(a)(6) is no longer authorized.

**D. Request for Injunctive Relief**

Finally, Petitioner seeks injunctive relief related to potential third-country removal. ECF No. 1 § IV.3. Respondents do not address this claim for relief.

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). To obtain a permanent injunction, a party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). A party must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008).

Petitioner has failed to show that he faces an imminent threat of irreparable injury related to third-country removal. There is no evidence that removal to Sudan is impossible or that Respondents have abandoned efforts to remove Petitioner to Sudan. Nor is there evidence that, should the government ultimately pursue third-country removal, the federal regulations would be so inadequate as they relate to Petitioner that a court order is necessary to prevent irreparable harm. Thus, Petitioner's request for injunctive relief

related to possible third-country removal is denied. Nothing in this Court's order prevents Petitioner from seeking relief in the future should it become necessary.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. Petitioner's Petition for Writ of Habeas Corpus in **GRANTED IN PART**;

2. Respondents must immediately release Petitioner from custody, subject to appropriate conditions of supervision;

3. The Government may only re-detain Petitioner after providing notice of removal, including to a third country, and a pre-deprivation hearing;[4] and

4. Petitioner's request for injunctive relief is **DENIED**.

5. As this concludes the litigation in this case, the Clerk of Court is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

Dated: November 9, 2026

Honorable Benjamin J. Cheeks
United States District Judge

---

[4] To the extent Respondents seek to remove Petitioner to a third country, such removal "must be preceded by written notice to both the non-citizen and the non-citizen's counsel in a language the noncitizen can understand. Following notice, the individual must be given a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal." *Zerai v. Noem*, No. 5:26-CV-00972-AYP, 2026 WL 1453931, at *9 (C.D. Cal. May 14, 2026) (quoting *Hernandez v. Becerra*, No. 1:26-CV-00001-JLT-SKO (HC), 2026 WL 479957, at *5 (E.D. Cal. Feb. 20, 2026)).